## Appeals of William Loughlin et al., Board of Revision of Taxes, Assessors of Taxes, and Receiver of Taxes of Philadelphia County.

The acts of June 7, 1879, June 10, 1881, and June 30, 1885, do not impose a state tax on mortgages owned by corporations.

It is a matter of the gravest doubt whether the acts of April 29, 1844, and April 22, 1846, so far as they relate to the taxation of mortgages in the hands of corporations are not repealed by the acts of 1879 and 1885.

It is not the proper function of the judiciary to impose taxation (which is a species of confiscation) by a strained construction of doubtful legislation.

The assessment and collection of a tax not distinctly authorized by statute will, therefore, be restrained by injunction.

(Mr. Justice STERRETT dissents.)

(Argued April 4, 1887.   Decided May 30, 1887.)

January Term, 1887, Nos. 170, 185–204, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeals from decrees of the several Courts of Common Pleas of Philadelphia County enjoining the assessment and collection of taxes upon mortgages held and owned by twenty-one corporations of the City of Philadelphia.   Affirmed.

These were bills in equity filed by the twenty-one following corporations, viz.:

Guarantee Trust & S. D. Co.; Delaware Mut. Saf. Ins. Co.; Girard Life Insurance, Annuity & Trust Co.; Penna. Co. for Insurances, etc.; American Fire Ins. Co.; Provident Life & Trust Co.; Fidelity Ins., Trust & S. D. Co.; Philadelphia Trust, etc. Co.; Spring Garden F. Ins. Co.; Ins. Co. of N. A.; Penna. Fire Ins. Co.; Mechanics Ins. Co.; United Firemen's Ins. Co.; Fire Ins. Co. for County of Phila.; Lumbermen's Ins. Co.; Fire Association; Western Sav. Fund Society of Phila.; Phila. Sav. Fund Society; Beneficial Sav. F. Society; Philadelphia Sav. F. Society; and Penn Mutual L. Ins. Co.

In several of the cases preliminary injunctions were granted in the courts below, and this action, reported below in Guarantee

Trust Co. v. Loughlin, 2 Pa. Co. Ct. 591, and Delaware Mut. Safety Ins. Co. v. Loughlin, 2 Pa. Co. Ct. 600, was affirmed on appeal in Hunter's Appeal, 18 W. N. C. 411.

In each case a demurrer or answer was then filed.

One case in which an answer was filed, *viz.,* Girard Life Ins. etc., Co. v. Loughlin et al. C. P. 2, December Term, 1883, No. 417, was referred to Samuel W. Pennypacker, Esq., as master, who reported as follows:

The bill sets out those parts which are material, as follows:

1. The complainant is a corporation duly incorporated by act of assembly of the commonwealth of Pennsylvania, dated the 17th day of March, 1836, and by various supplements thereto, approved February 16, 1855, and March 22, 1870, for the purpose of making and effecting insurances on lives of whatsoever sort or nature, to contract for, grant, and sell annuities and reversionary payments, to take, receive, and hold all estates and property, real and personal, which may be granted, committed, transferred, or conveyed to it, with its consent, upon any trust or trusts whatsoever, at any time or times, by any person or persons, body or bodies corporate, or by any court of the United States, or of the commonwealth of Pennsylvania, and to administer, fulfil, and discharge the duties of such trusts, and to receive all sums of moneys which shall be deposited with the said corporation, on such terms of interest and repayment as shall from time to time be agreed upon and prescribed by the board of managers of the said corporation, not exceeding the legal rate of interest; Provided, That it shall not be enabled to invest any portions of its funds in the discount of promissory notes or bills of exchange, and shall issue no notes or bills of credit or promissory notes in the nature of bank notes, or exercise any banking privileges whatever.

2. That it is also authorized to accept and execute the office or appointment of executor or administrator of any kind and nature whatever, whether such office or appointment is conferred or made by any person or persons, or by any register of wills, or by any orphans' or other courts, either of the United States or of this commonwealth.

3. That its authorized capital is $450,000, divided into 18,-000 shares of $25 each.

4. That in pursuance of its powers, it receives from time to time money on deposit at interest, which it invests according to law.

5. That its capital stock and its reserve fund, which is large, are to a considerable extent invested in loans, stocks, and securities authorized by law.

6. That the dividends upon its capital stock for some time has exceeded 6 per cent per annum upon its par value, and it has made returns in accordance with law in each and every year, of the amount of said dividend, and have been assessed and taxed at the rate fixed by law upon its capital stock for each 1 per cent of dividend so made and declared. All taxes due by them had been duly returned, assessed, and paid.

7. That the defendants, William Loughlin, George W. Fairman, and Simon Gratz compose the board of revision of taxes of the city of Philadelphia.

8. That the defendants, James D. Keiser and Albert A. Dunton, are assessors of the eighth ward of said city, in which the office of complainant is located.

13. That it is informed and believes, and therefore avers, that it is the intention of said assessors, under the instruction of said board of revision, to return to the latter, as liable for taxation, a certain round sum guessed at or estimated by them as representing the value of the following assets to complainant belonging,—*viz.*, all mortgages, money owing by solvent debtors, whether by promissory note, penal or single bill, bond or judgment; also all articles of agreement and accounts bearing interest; also all shares of stock in any bank, banking or saving institution or company, and all public loans or stocks whatsoever, except those issued by this commonwealth or the United States, and all money loaned or invested on interest in any other state, and all other moneyed capital.

14. That being advised by counsel that it is not liable to be assessed upon any of the above-described assets, or to be taxed therefor, it has refused to make any return thereof, fearing that such return would be an admission of liability, which it disclaims; but if it be decreed by the court that it is thus liable, it is ready and willing to make the fullest return of all said assets.

15. That it is advised by counsel that the said board of revision is authorized, in case of said return by the said assessors,

to add to the amount thus returned an amount equal to 50 per cent thereon, and to proceed thereafter to levy a tax upon the whole amount thereof; and it fears that unless restrained, the said board of revision must add said penalty.

16. That it is advised that upon the return to the said board of revision of the returns thus intended to be made by the said assessors, it will become the duty of said board of revision to make return to the board of revenue commissioners of the state of Pennsylvania of the amount thereof, together with that of said penalty; and it avers that it is the intention of the said board of revision to do so, and that thereupon the city of Philadelphia will be required to account to the commonwealth, and to pay to its treasurer the tax upon the said amount.

17. That it is advised that upon the making of said return by the said board of revision to said board of revenue commissioners it will become the duty of the former to assess upon, and collect from, it a tax at the rate of four mills upon the amount thereof; and it avers that, unless restrained, the said board of revision will issue a precept compelling it, under penalty of levy and distress, to pay said tax.

18. That by virtue of said returns and assessments of the said assessors and of said board of revision, it will be exposed to litigation, and its property will be liable to levy, and it will be subjected to great and irremediable loss.

19. That it is advised by counsel, and therefore avers, that the returns it has heretofore made fully comply with all the requirements imposed upon it by law; and it avers that it has paid all taxes for which it is liable. It is advised by counsel, and therefore avers, that it is not its duty to make any return of the subject matters of taxation above specified, and that it is not liable to pay any taxes thereon other than those which have already been paid in the manner above specified.

The bill prayed for relief as follows:

a. An injunction, special until hearing and perpetual thereafter, restraining James D. Keiser and Albert A. Dunton, assessors as aforesaid, from making any assessment upon complainant by virtue of its ownership of any of the assets specified in ¶ 13 of the bill, and from making any returns to the said board of revision of such assessment or of any estimated valuation of said assets.

b. An injunction, special until hearing and perpetual there-

after, restraining the said William Loughlin, George W. Fairman, and Simon Gratz, constituting the board of revision of taxes of the city of Philadelphia, and each and every of them, from adding 50 per cent to the amount of any return heretofore made, or which may hereafter be made by the said assessors, of the valuation of said assets to complainant belonging, specified in the thirteenth paragraph of the bill.

c. An injunction against the said Loughlin, Fairman, and Gratz, constituting said board, special until hearing and perpetual thereafter, restraining them from making any return to the board of revenue commissioners of the state of Pennsylvania of any assets specified in said paragraph of the said bill to complainants belonging, or any valuation thereof.

d. An injunction against said Loughlin, Fairman, and Gratz, constituting said board, special until hearing and perpetual thereafter, restraining them from levying any tax upon complainants by virtue of its ownership of any of said assets specified in said paragraph of the bill.

e. A decree that complainant is not liable to make any returns to the said assessors, or to said board of revision, of any of the assets specified in said paragraph of the bill, and that none of said assets so owned by it are liable to taxation under the provisions of § 17 of the act of the 7th of June, 1879, or of § 1 of the act of the 10th of June, 1881

f. General relief.

To this bill the defendants answered as to part, and demurred as to part. The demurrer has since been withdrawn of record. Upon the hearing before the master all of the facts alleged in the bill were formally admitted by defendants to be true, except those denied in ¶ 3 of the answer, which is as follows:

"That they deny the last allegation in the sixth paragraph and the first allegation in ¶ 19 of said bill, and on the contrary aver that from the sworn report made by the plaintiff to the insurance commissioner, in accordance with the laws of this commonwealth, of the property and assets owned by it at the close of the year 1883, it appears, and defendants therefore aver, that the said company owned at that time personal property of the classes enumerated in § 17 of the act of June 7, 1879, entitled 'An Act to Provide Revenue by Taxation,' and in § 1 of the supplement thereto, approved the 10th day of June, 1881, to the amount of $1,687,818.16 exclusive of $337,755.71 in bank,

which, at the rate of four mills, would yield a tax of $6,751.27, which tax, owing to the preliminary injunction granted in this case, has not been returned, assessed, or paid; that the value of the real estate owned by it is $1,550,261.25, and that the amount of personal property owned by it not included within the enumeration of the above-mentioned acts is $37,066.73; that the dividends actually paid by it amounted to $45,000 or 10 per cent on its capital, and it therefore was liable to pay a tax for the year 1884 of 5 mills on its nominal capital, or $2,250, which amount defendants are informed and believe, and therefore aver, has been paid; that the construction of the act under which plaintiff claims that, by the payment of the said so-called capital stock tax, it is exempt from the payment of the 4-mill tax upon personal property, would result in requiring plaintiff to pay a much lower rate of tax than individual citizens are required by said act to pay on their personal property; that the total amount of the so-called capital stock tax paid in 1884 by all the corporations of the state, which made, to the auditor general and insurance commissioner, the sworn returns required by law to be made for the information of the legislature, was equal to only about 1 mill on the dollar of the aggregate amount of their mortgages and other personal property enumerated in the first section of said act of June 10, 1881, upon which classes of personal property individuals are required to pay a tax of four mills on the dollar."

The master finds as a fact that the dividends declared and paid by complainant for a number of years have exceeded 6 per cent per annum upon the par value of the capital stock; that it has made returns in each of said years of the amount of the dividends and has been assessed and taxed at the rate fixed by law upon its capital stock for each 1 per cent of the dividends it has made and declared. These taxes it has paid, including those for the year 1883, which amounted to $2,250.

The sole inquiry under the pleadings, therefore, is whether these are all of the taxes assessable upon and payable by the complainant, or whether it is liable under § 17 of the act of June 7, 1879, and § 1 of the supplementary act of June 10, 1881, to pay in addition a tax upon the subjects enumerated in these sections.

Counsel for the defendants offered in evidence before the master "Eleventh Annual Report of the Insurance Commission-

er of the State of Pennsylvania. Part II. Life & Accident Insurance," "Eleventh Annual Report of the Insurance Commissioner of the State of Pennsylvania. Part I. Fire & Marine Insurance," "Report of the Auditor General on the Finances of the Commonwealth of Pennsylvania for the Year Ending November 30, 1884," "Reports of the Several Banks and Savings Institutions and Banks Organized under the Free Banking Law of Pennsylvania, Communicated by the Auditor General to the Legislature, January 1, 1884." He also offered in evidence schedules showing the results of an analysis of these reports.

Counsel for the complainant waived all objections of form with reference to these reports and schedules; and it was agreed before the master that they should be treated with the same force and effect as though the original books and reports of the companies therein referred to had been offered. He objected, however, to the offer of each of these reports and schedules, in so far as they gave facts concerning companies other than the complainant, upon the ground of irrelevancy.

The purposes of these offers was to show that the taxes paid by corporations, under the provisions of § 4 of the act of 1879, of ½ mill upon the capital stock for each 1 per cent of dividend when the dividend is 6 per cent or more upon the par value of the stock, and of 3 mills upon each dollar of the valuation of the capital stock when the dividend does not amount to 6 per cent upon the par value, are in fact much less than would be a payment of 4 mills upon the value of such personal property as is enumerated in § 17 of the act of 1879, and is owned by them. It is then contended that, admitting these facts to be true, § 17 of the act of 1879, and § 1 of the act of 1881, must be construed to include corporations, since if they should be excluded they would pay a less tax upon mortgages, etc., than individuals; and the act would be in contravention of § 1, article ix. of the Constitution, which provides that "all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws."

The master feels that it would not be either proper or profitable for him to go into any discussion of the effect of § 17 of the act of 1879, and § 1 of the act of 1881, or of the constitutionality of these acts. These questions have been very carefully and elaborately discussed in this court in the case of Guarantee Trust

Company v. Loughlin, and by the supreme court in Fox's Appeal, 112 Pa. 337, 4 Atl. 149, and in the case of Hunter's Appeal, 18 W. N. C. 411.

These cases have definitely decided that the sections of the acts referred to do not apply to corporations, and that they are not unconstitutional because of the fact that they do not so apply. The master, therefore, sustains the objection to the testi-mony offered, and excludes all parts of the reports and schedules which relate to companies other than the complainant.

The master, however, considers it to be his duty to analyze these reports and report the facts which they disclose, in order that (should there be any disposition upon the part of your honorable court, or of the supreme court to reconsider the question in view of anything they may contain) there may be no occasion for a subsequent reference. It appears, from such analysis and a careful calculation and comparison of the figures, that the aggregate amount of the capital stock of all of the corporations of the state which made returns to the auditor general and insurance commissioner for the year 1883, was on the 31st day of that year $24,433,927.31.

The total amount of their real estate, bonds of the United States and of the state of Pennsylvania, and other property not enumerated in § 17 of the act of 1879, and § 1 of the act of 1881, was at the same time $29,580,389.09. The total amount of their mortgages, moneys at interest, and other personal property, enumerated in the said sections of the said acts was $86,932,-250.63. The total of the assets of these corporations was $116,-512,639.72. The total amount of the dividends declared and paid by them during the same year was $2,085,919.47, which equals 8½ per cent upon the par value of their capital stock. The total amount of the tax paid upon the capital stock for that year by these corporations was $143,617.45, which is equivalent to 1¼ mills upon each dollar of their assets and to about 2 2/10 mills upon each dollar of their mortgages and other personal property enumerated in said sections of said acts. A tax of 4 mills upon each dollar of the total amount of the mortgages and other taxable personal property owned by these corporations for the year 1883 would have amounted to $347,729.

The master reports that the preliminary injunction heretofore made should be continued and made perpetual.

Thereupon final decrees in all the cases were entered by the courts below; and this was assigned as error.

*Ellis Ames Ballard, A. Wilson Norris,* and *Rufus E. Shapley,* for appellants.—The question raised by these appeals—whether under existing laws corporations are exempt from the payment of the 4 (or 3) mills tax upon their mortgages, etc.—comes before the court in a different shape from that in which it was raised in Fox's Appeal, or in the appeals from preliminary injunctions recently argued at Pittsburgh.

In the case of the Girard Life Insurance Company, the master's report shows that: (*a*) As to this particular company, a gross want of uniformity actually results, if the construction of the acts by the lower courts be correct; and (*b*) that as to all the moneyed corporations of the state which make returns according to law, an equally gross want of uniformity results, because the so-called capital stock tax paid is not equal to a tax of more than $1\frac{1}{4}$ mills on each dollar of their assets, or to more than 2 2/10 mills on each dollar of their mortgages, etc. (if their real estate, etc., is to bear no part of the so-called capital stock tax paid); while individuals are compelled to pay 4 mills, under the acts of 1879 and 1881, and 3 mills, under the act of 1885, on each dollar of their mortgages, etc.

In the twenty-one Philadelphia cases now before this court on appeals, in which the same question is raised, the following facts are admitted in the pleadings, as the records themselves show, *viz.*: (1) That in each of these twenty-one cases a similar want of uniformity of taxation results under the decisions of the lower courts; and (2) that in all of them the capital stock of $13,710,000 is more than represented by $16,828,344 of real estate and other property exempt from this personal-property tax, while the mortgages and other personal property enumerated in § 17 of the act of 1879 amount to $81,365,162.11, and the total assets to $98,193,506.38; that the dividends paid amounted to $1,932,000 in a year, being equal to an average dividend of 14 per cent on the entire capital stock; that the so-called capital stock tax paid was equivalent to but 9/10 of 1 mill on the total assets, or to 1 1/10 mills on the mortgages, etc., only; and that the total so-called capital stock tax and tax on net earnings were equivalent to but 1 2/10 mills on the total assets, or to 1 5/10 mills on mortgages, etc., only.

The master's report in the one case, and the facts admitted in the pleadings in the other cases, show that, in fact, double taxation does not result in the sense in which it was supposed by the lower courts that it would result, because, in every case, the capital stock, which was supposed to bear the burden of the so-called capital stock tax, is invested in, or at least represented by, real estate and other property exempt from the personal property tax, largely exceeding the amount of capital stock actually invested by stockholders, and that the only part of the assets subject to the personal property tax consists of mortgages, etc., held in excess of the other assets which may fairly be regarded as representing the capital stock.

The main grounds upon which the commonwealth claims that the final decrees entered by the lower courts in these cases should be reversed—notwithstanding what was said by this court in Fox's Appeal, and its recent disposition of the appeals from preliminary injunctions—are these:

The decision of the lower courts resulted from several manifest errors,—*viz.*:

Supposing that the act of 1879 was intended to introduce an entirely new system of taxation, and to be a complete revision of all the tax laws affecting both corporations and individuals; whereas, in fact, it was intended to be only a revision of the tax laws affecting corporations, as the original title shows (Martin v. Com. 107 Pa. 185), and so far as relates to the personal property tax, there was nothing new in it, if the commonwealth's contention be correct, but it was only a re-enactment of a system of taxation which had been in force for thirty-five years.

Assuming that § 17 could not be held to apply to corporations unless they were meant to be included in the word "persons," thereby overlooking the general words "all mortgages," etc., and then holding that the word "person" was to be construed as it had been (in School Directors v. Carlisle Bank, 8 Watts, 289), when used in the old act of 1831, from which this act was admittedly not copied, whereas the word "person" as used in the act of 1844, from which this act was admittedly copied, had been construed by this court, in six later cases, to include corporations.

Assuming that, by construing the act to exempt the mortgages, etc., of corporations, uniformity of taxation would result, when, in fact, the contrary must be the necessary result.

For thirty-five years prior to 1879 all mortgages, etc.,

whether owned by corporations, or by individuals, were subject to a 3-mill tax, under the act of 1844, and corporations, in addition, to a so-called capital stock tax measured by the dividends declared.

In enumerating what classes of personal property should be liable to this personal property tax, the legislature copied into § 17 of the act of 1879 the very same language which had been adopted thirty-five years before in the act of 1844 to include the mortgages, etc., of corporations, as well as of individuals, and which had been for thirty-five years thus construed by this court.

Therefore, upon the principle *Contemporanea expositio forlissima in lege,* and upon the authority of Fox's Appeal, 112 Pa. 337, 4 Atl. 149; Guarantee Trust Co. v. Loughlin, 2 Pa. Co. Ct. 591, and Delaware Mut. Ins. Co. v. Loughlin, 1 Pa. Co. Ct. 600, as the very words used in the act of 1879 had been repeatedly construed by this court to include corporations, in Philadelphia Sav. Fund Soc. v. Yard, 9 Pa. 359; Fire Ins. Co. v. County, 9 Pa. 413; Easton Bridge v. County, 9 Pa. 415; Carbon Iron Co. v. Carbon County, 39 Pa. 251; Lackawanna Iron & Coal Co. v. Luzerne County, 42 Pa. 424, and Lycoming County v. Gamble, 47 Pa. 106, all of which were overlooked by the lower courts, we are bound to presume that the legislature adopted the construction so often put upon those words by this court.

If the legislature had intended to introduce a new system by which, thereafter, individuals only, and not corporations, should pay a certain specific tax upon their mortgages, etc., it would naturally have used language which would have clearly shown such a purpose, rather than the very same language, which for thirty-five years had been held to include corporations.

The legislature must necessarily have known, from the official reports made to it annually according to law, showing the exact financial condition of all the moneyed corporations of the state, that, if corporations were thereafter to be exempt from this tax, while individuals were compelled to pay it, a gross want of uniformity of taxation and a clear violation of the Constitution would result.

The legislature could not have intended the so-called capital stock tax, in the case of corporations, to take the place of the ⅓-mill tax on mortgages, etc., in the case of individuals, because

the first is a variable tax, depending upon the ratio of dividends, not to the actual assets, but to the nominal capital stock, which could not be equal to the tax which individuals are compelled to pay on mortgages, etc., except in the case of a few companies, the bulk of whose assets happens to be invested in other species of property, or where dividends, ranging from 20 to 50 per cent, are declared; and because many of the largest corporations of the state have no capital stock, and, therefore, pay no so-called capital stock tax.

Nor could the legislature have intended the tax on net earnings, paid by those companies which have no capital stock, to take the place of the tax on personal property, because the former is not a tax upon property, but upon profits; and if no profits should be earned in any year, no tax would be paid by a company owning a vast amount of mortgages, etc.

The language of § 17 of the act of 1879 shows that the intention was to impose this tax upon all mortgages, etc., without regard to their ownership, because exceptions are made which would have been wholly unnecessary if the section had been intended to apply only to individuals.

Even if the legislature had known nothing of the results which would naturally follow from exempting the mortgages, etc., of corporations from this tax, there is nothing in the act, or in the tax legislation of the state, to show a purpose to so radically alter the system of taxation which had prevailed for thirty-five years; but, on the contrary, it is evident that the purpose was to increase the revenue of the state, not to diminish it.

As this court, in Fox's Appeal, upheld the constitutionality of the act, even upon the assumption that the mortgages, etc., of corporations were exempt, and when it was doubtful whether substantial uniformity of taxation would result under such a construction, it will the more readily uphold its constitutionality now, when it is demonstrated that, upon any other construction than that contended for by the commonwealth, a gross want of uniformity must result—and when it is also demonstrated that this construction, while it may in a few instances result in a species of double taxation, will be in harmony with the system of taxation which has so long prevailed in this state, and which this court has uniformly upheld.

If the mortgages, etc., owned by corporations are not taxable under the acts of 1879, 1881 and 1885, they are still taxable

under the acts of 1844 and 1846, which were only repealed in so far as they were inconsistent with or substantially re-enacted in the later acts.

*John J. Ridgway, John G. Johnson, Joseph B. Townsend, Charles S. Pancoast, John Marshall Gest, Richard L. Ashurst, Josiah R. Adams, Samuel B. Huey, Edward S. Sayres, John Hill Marlin, Richard C. McMurtrie, Theodore F. Jenkins, Redding, Jones & Carson, Edwin S. Dixon, William E. Littleton, William Henry Rawle, George Tucker Bispham, William Henry Coleman,* and *Henry T. Coleman* for appellees.

*M. E. Olmsted* for corporations not parties but interested in the question.

PER CURIAM:

After a very careful consideration of the several appeals now before us we are of opinion that the acts of 1879, 1881, and 1885 do not, nor do any of them, impose taxation for state purposes upon mortgages owned by corporations. Our views upon this subject were fully expressed by Mr. Justice PAXSON in his opinion in the case of Fox's Appeal, 112 Pa. 337, 4 Atl. 149, and it is unnecessary to repeat them now.

In consideration of the very comprehensive character of the legislation contained in these acts in reference to the taxation, as well of mortgages as of other forms of personal property, it is a matter of the gravest doubt whether the acts of 1844 and 1846, so far as they relate to the taxation of mortgages in the hands of corporations, are now in force. We do not think it is the proper function of the judiciary department of the government to impose taxation, which is a species of confiscation, by a strained construction of doubtful legislation. The proper remedy for that kind of difficulty is legislation which is not doubtful.

The repealing clauses of the acts of 1879 and 1885, embrace all prior laws which are "inconsistent" with or "substantially re-enacted" by those acts. It is impossible for us to say that the acts of 1844 and 1846 are not "inconsistent" with, or "substantially re-enacted" by the acts of 1879 or 1885. So far as the taxation of mortgages is concerned the later legislation seems to provide a system full, complete, substitutionary in character,

and seemingly *intended* to take the place of the former. In the very best view of the subject for the commonwealth, it is exceedingly doubtful whether the earlier acts can be considered as now in force for the purpose of taxing mortgages in the hands of corporations; and the mere fact of such doubt interdicts the proposed taxation.

Decrees affirmed.

Mr. Justice STERRETT dissents. Mr. Justice PAXSON absent.